BAILES, Judge.
Plaintiff, Mrs. Viola B. Nelson, has brought this action against Mrs. Ruby P. Walker, defendant, to enforce specific performance of a contract to purchase entered into between the parties. The property which plaintiff contracted to sell, and the defendant contracted to buy, is described as the north 39 feet of Lot No. 4 of Square 45 of the Beauregard Town subdivision to the City of Baton Rouge, East Baton Rouge Parish, Louisiana. The agreed consideration was $6,500.
The purchase agreement was signed between the parties on August 27, 1954, and according to its terms the act of sale was to be entered into within ten days after the signing of the agreement and at the expense of the purchaser; occupancy was to be given within sixty days, and the vendor agreed to pay rent at the rate of $65.00 per month from the date of sale until possession was surrendered to the buyer. The purchaser made a deposit of $500 under the condition that it was not to bear interest and was not to be considered as earnest money. The parties reserved the right to demand specific performance.
The time for performance of the contract was mutually extended beyond the initial ten day period, and on October 8, 1964, defendant’s attorney wrote plaintiff’s attorney setting forth certain requirements to be met by plaintiff before title could be accepted by defendant. These requirements were not met, defendant refused to take title to the property and this suit was filed on March 4, 1965.
The defendant resists compliance with the purchase agreement on the ground the title to the subject property in the name of plaintiff is not valid and merchantable, and that it is suggestive of litigation. Defendant specifically alleges eleven separate defects in plaintiff’s title.
To the plaintiff’s action, the defendant filed exceptions of pre-maturity based on-the ground that plaintiff’s petition failed to-allege she tendered title and offered to perform under the terms of the purported agreement; and exception of no right and no cause of action on the ground plaintiff failed to allege there had been a tender to-title within the time or times specified in-the contract; and also an exception of non-joinder of parties plaintiff, reasoning that the purported contract was one whereby defendant offered to buy from plaintiff and' her husband, H. L. Nelson, and the contract was never accepted by H. L. Nelson-.
Plaintiff alleged in her petition that the defendant was a non-resident of the State-of Louisiana. Under this allegation of non-residency, plaintiff sought and obtained' a writ of attachment directed' against certain funds in the name of the defendant on deposit in a savings account in the Union Federal Savings and Loan Association of Baton Rouge, and also the appointment of a curator ad hoc. The Union Federal Savings and Loan Association was made garnishee and thereunder the court ordered' the funds turned over to the Sheriff of East Baton Rouge Parish. Defendant filed: *57 a motion to dissolve the attachment on the ground she was a resident of the State of Louisiana, and prayed for attorney’s fees in the amount of $1,000. No other damages, other than attorney’s fees were sought against the plaintiff. On trial of the motion to dissolve, the trial court dissolved the writ of attachment, and the defendant’s claim for attorney’s fees as damages was denied.
After trial of the case on the merits, the lower court overruled all exceptions and found plaintiff possessed a good, merchantable and valid title, and defendant was ordered to comply with the terms of the purchase agreement within 30 days, in default of which there was judgment in plaintiff’s favor recognizing defendant as owner of the subject property, and in such event there was judgment in favor of plaintiff and against defendant in the full sum of $6,500, with legal interest thereon from date of judicial demand until paid, and with recognition of vendor’s lien and privilege on the subj ect property for the amount of this judgment; further it ordered the sale of the property by the sheriff with payment of the proceeds to plaintiff by preference and priority over all other persons. From this judgment, defendant appeals.
Unquestionably the trial court was •correct in overruling the exception of non-joinder of plaintiff’s husband in this action •.for the clear reason he, H. L. Nelson, has no interest whatever in the subject property. 'The evidence shows beyond all doubt whatever title the plaintiff has to the property, it was acquired prior to the marriage between plaintiff and her present husband, .H. L. Nelson.
We hold the trial court was correct in overruling the exceptions of prematurity and of no right or no cause of action, both based on the same ground. The proffer of title to the subject property to defendant prior to commencement of this action would have been a vain and usd'ess procedure inasmuch as defendant had taken the position plaintiff’s title was defective, invalid, unmerchantable and suggestive of litigation. In addition to this fact, a tender of title was not a pre-requisite to institution of action for the reason stated in Healy v. Southern States Alcohol Mfg. Co. Inc., (1915) 136 La. 1080, 68 So. 132. Therein the Supreme Court held:
“It is also contended by the defendant that, as the plaintiff’s demand is upon the theory of a violation of the contract, the plaintiff should have put the defendant in default before the expiration of the term of the contract. This demand, however, is not founded on the theory of a violation of the contract, but is in the enforcement of the contract.”
This is a suit to enforce performance of the contract, and not for damages for violation of the contract, therefore a tender of title is not a pre-requisite to institution of this action.
We now direct our attention and discussion to the following ground urged as a defect in plaintiff’s title. Defendant alleges “The community property settlement entered into between John Lee Brashear and the plaintiff herein on April 4, 1944, provides that the plaintiff waived all claims to alimony and support and for said reason same was null and void.”
The trial judge, inter alia, in his reasons for judgment, stated:
“ He * #
“On the suggested defects in her title to the property, plaintiff pleads the prescriptions of ten and thirty years. The evidence shows that plaintiff and her authors in title have had complete and undisturbed possession of the property since as early at least as the year 1933. Plaintiff herself has had possession of the property under a deed translative of title for twenty years.
“Without enumerating the several alleged defects in plaintiff’s title, it suffices to say that in my opinion they are, even if once *58 real defects, cured by the prescriptions of ten and thirty years which plaintiff pleads. It is necessary, however, to here consider defendant’s contention that plaintiffs possession of the property has not been in good faith.
“Plaintiff acquired the full ownership of the property in 1944 in a community property partition between her and her former husband, John Lee Brashear,- from whom she was then judicially separated but not divorced. A part of the consideration for the act of partition was plaintiff’s waiver of all claims for alimony.
“The court agrees with defendant’s contention that plaintiff was, on the date of the partition, incapable on contracting insofar as alimony was concerned, and that she had the right to seek an annulment of the partition on that ground. Russo v. Russo, 205 La. 852, 18 So.2d 318. Defendant further contends that this constituted a defect in plaintiff’s title, and that she was charged with knowledge of such defect for the reason that immediately after the partition she secured a loan on the property, in connection with which she had a title examination made, citing Martin v. Schwing Lumber and Shingle Co., Inc., 228 La. 175, 81 So.2d 852, and Holley v. Lockett [La.App.], 126 So.2d 814. The court has no quarrel with the cited decisions, but is of the opinion they are not applicable here, since plaintiff alone had the right to question the validity of the 1944 partition, and upon the execution of a warranty deed to the property by plaintiff to defendant, that right of plaintiff would no longer exist.
“I see nothing in the record which is even slightly suggestive of litigation involving title to the property, and I am of the opinion plaintiff has a valid merchantable title thereto.
“ * * (Emphasis supplied)
In her brief, plaintiff argues:
“ % * *
“The third defect claimed by appellant is that the contract in which John Lee Brashear transferred to the appellee his interest in the property is invalid for the reason that it recites that as a part of the consideration the appellee waived her right to alimony. In support of her claim that the sale is invalid she cited the case of Russo v. Russo [205 La. 852], 18 So.2d 318. In this case the wife had sold her interest in the community property to her husband and also signed a contract waiving her right to support. She brought action to collect alimony and when her husband objected because of these contracts she attempted to have them set aside as invalid. The Lower Court denied her motion. On appeal the Court said insofar as a settlement of the community of acquets and gains is concerned both parties had the legal capacity to bind themselves. See second paragraph second column page 320 of the reporter. The case was remanded to the Lower Court. The question of validity of title to property was not before the Court in the cited case and it has no application here.
“Civil Code Article 2446 provides that a contract of sale between husband and wife can take place when only the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
“Even if the contract is voidable because of the incapacities between the parties no action can be taken to annul the same at this late date. See Revised Civil Code Article 2221 which provides the action to rescind a contract must be brought within ten years of the date of the contract. The contract complained of by the defendant was entered into in 1944 and the action to annul has long ago prescribed.
(( * * * a
In the act of partition and community property settlement dated April 5, 1944, entered into between John Lee Brashear and Viola Bankston Brashear, the following provisions, inter alia, were contained therein.
“The property herein conveyed by said John Lee Brashear is conveyed and de *59 livered for and in consideration of the sum of One Thousand, Three Hundred ($1,300) Dollars, lawful current money of the United States of America, receipt of which is hereby acknowledged and full acquittance granted therefor; and for the further and other consideration of the said Mrs. Viola Bank-ston Brashear relinquishing, waiving and releasing any and all claims and rights to past, present cmd future alimony and/or support of her against her said husband; the parties hereto having agreed and hereby •and herewith agreeing that for and in consideration of the property transfer herein made and in consideration of Mrs. Viola Bankston Brashear paying all costs in the separation suit hereinabove referred to, including the fees of her attorneys, the said Mrs. Viola Bankston Brashear hereby acknowledging full, complete and entire payment and satisfaction of any claims which she now has or may have in the future for alimony or support against her said husband, and the said John Lee Brashear does hereby forever quitclaim, relinquish, and renounce any and all claims which he now has or may have in and to the real property hereinabove described, and his interest therein being hereby the herewith conveyed unto the said Mrs. Viola Bankston Bra-shear.
“ * * (Emphasis supplied)
If the partition between plaintiff and her husband, Brashear, is defective, it must be found to be so under the prohibition of a husband and wife contracting with each other, except under the express terms, conditions and provision of Article 2446 of the Revised Civil Code. The defendant relies on the rationale of the case of Russo v. Russo (1944), 205 La. 852, 18 So.2d 318. Also pertinent to this question is a consideration of whether the nullity, if there is one, is absolute or relative.
Actually in Russo v. Russo, supra, the question before the Supreme Court, and that which prompted it to grant the writs was the determination of the district court that the plaintiff-wife must offer to return or tender the return of the consideration received from the defendant-husband with whom she had entered into a contract waiving and relinquishing her right to alimony, prior to her right to attack the validity of the contracts executed after the judicial separation from bed and board and prior to final divorce.
■Therein the court stated:
“[3] In the instant case, the contracts in question were entered into subsequent to a final judgment of separation from bed and board between the husband and wife.
“The pertinent part of Article 2446 of the Revised Civil Code reads:
‘2446. A contract of sale, between husband and wife, can take place only in the * * * following cases:
T. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.’
“Consequently, insofar as a settlement of the community of acquets and gains is concerned both parties had the legal capacity to bind themselves. We have not been referred to any law of this State which grants to a married woman the legal capacity to bind herself in the settlement, renunciation or waiver of her right to alimony pendente lite.
“Article 148 of the Revised Civil Code reads:
‘If the wife has not sufficient income for her maintenance pending the suit for a separation' from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband. (As amended, Acts 1928, No. 130.)’
“Clearly, the above amended article of the Code does not provide for any such authority. Act No. 283 of 1928 expressly states that it shall not modify or affect *60 laws relating to the community of acquets and gains and it does not attempt to deal with the subject of alimony or the right of a wife to settle, waive, or renounce such claims.
“It is well settled that husbands and wives are incapacitated from contracting with each other during marriage, except in the cases enumerated in Article 2446 of the Revised Civil Code. Burns v. Thompson, 39 La.Ann. 377, 1 So. 913. Nothing contained in that article authorizes the wife to enter into a settlement or waiver of her right to alimony during marriage.”
Certainly the provisions of LSA-C. C. Article 2446 clearly and definitely enjoins the use of any right of the wife against the husband as a consideration in dealing with the husband, and vice versa, except those rights with which they are expressly authorized to deal under the three cases enumerated in Article 2446.
It is against the public policy of this state, and the express prohibitory law thereof, for the wife to deal with her husband in a manner not permitted by law (Article 2446) and to alienate a right which is owed to her by her husband and an obligation due by the husband to the wife. The obligation is owed to the wife, if she has not sufficient income for her maintenance pending the suit for either separation from bed and board or for divorce, to provide under order of the court, a sufficient amount for her support commensurate with her needs and his means. If it were not so, the wife very easily could become a charge of the public fisc for her support and maintenance as a destitute person.
The plaintiff’s argument that the contract, even if voidable because of the in-capacities between the parties no action can be taken to annul it at this time, citing LSA-C.C. Article 2221 which provides a prescriptive period of ten years for rescission of the contract, cannot be sustained.
We are not herein concerned with* an action for recission of the contract but a determination of valid title to the subject property. The agreement, a part of the consideration of which is reprobated by law, that is the waiver of the right to-alimony, is an absolute nullity.
Furthermore, in the case of Whitney National Bank of New Orleans v. Schwob (1943), 203 La. 175, 13 So.2d 782,. we find the following pronouncement to be-apropos to the matter before us. In discussing the applicability of LSA-C.C. Article 2221, the court stated: “This court has differentiated between absolute nullities-in derogation of public order and good morals and those which are established in-the interest of individuals. The latter nul-lities are susceptible of ratification, either expressly or impliedly, and may be prescribed against, while the former are never susceptible of ratification and can never be prescribed against. * * * ”
Also see Byrd v. Byrd (1956) 230 La. 260, 88 So.2d 214 and Barnes v. Barnes (1924) 155 La. 981, 99 So. 719.
The trial court stated “ * * * The-Court has no quarrel with the cited decisions, but is of the opinion they are not applicable here, since plaintiff alone had' the right to question the validity of the 1944 partition, and upon the execution of a warranty deed to the property by plaintiff to defendant, that right of plaintiff would no longer exist.”
As this agreement is an absolute nullity, and not voidable at the option of the plaintiff, it follows that no benefits therefrom flow to either party thereto. LSA-C.C. Article 12 states: “Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.” See Kelly v. Kelly (1913), 131 La. 1024, 60 So. 671, Sonnier v. Fris (1952), 220 La. 1085, 58 So.2d 393, Smith v. Smith (1960), 239 La. 688, 119 So.2d 827; and Lloyd v. Register (La.1966), 184 So.2d 279.
*61 For the foregoing reasons, therefore, we find the plaintiff’s title to the subject property is not valid and merchantable, and accordingly the defendant is relieved of the obligation to purchase same under the purchase agreement herein sued on by the plaintiff, and the defendant is entitled to the return of the deposit of $500 made under the said agreement.
We now pass to a consideration of the question of the issuance of the writ of attachment and the denial of attorney’s fees for the dissolution thereof. The plaintiff did not appeal from the judgment of the trial court dissolving the writ of attachment, nor has she answered the appeal of the defendant. The judgment of the trial court thereon is final.
The trial judge did not allow attorney’s fees to defendant for the dissolution of the writ of attachment, and assigned no reasons for such denial. We do not have the benefit of his reasons for such denial. The motion for the dissolution of the writ was contested by the plaintiff. The ground for the dissolution was that defendant was a resident of the State of Louisiana. It was conclusively shown that she was entitled to a dissolution of the attachment, and we feel she is entitled to be awarded attorney’s fees, under the provisions of LSA-C.C.P. Article 3506. This expense to her was provoked by the unlawful and unwarranted application for the attachment by the plaintiff. We believe this to be the only element of damages shown by the defendant. She is awarded the sum of $400, as attorney’s fees.
We find it unnecessary, because of our holding herein, to consider the other alleged defects in plaintiff’s title as set forth in defendant’s answer.
We notice the defendant’s answer does not ask for the return to her of the $500 advanced on the execution of the agreement to purchase, but we feel justice demands that we order the return of this advance deposit to her. See LSA-C.C.P. Article 862.
It is therefore ordered, adjudged and decreed that the judgment appealed from is annulled and reversed, and there is judgment herein in favor of defendant and against the plaintiff cancelling and annulling the contract of purchase entered into between plaintiff and defendant for the reasons assigned above; and further there is judgment herein in favor of defendant and against the plaintiff in the full sum of $500, together with legal interest thereon from date of judicial demand until paid, as the amount deposited by defendant with the execution of the purchase agreement; and further there is judgment herein in favor of defendant and against the plaintiff awarding damages for the wrongful issuance of the writ of attachment in the amount of $400, together with legal interest thereon from date of judicial demand until paid. Plaintiff to pay all costs of court.
Reversed and rendered.